UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KLAUSMAIR CONSTRUCTION, LLC, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | No. 5:18-cv-00358 |
| : | |
| GLADDEN FARM, LLC and JOHN RISTON, : | |
| : | |
| Defendants. : | |

**O P I N I O N**

**Defendants' Motion to Dismiss for Lack of Jurisdiction, ECF No. 3 – Granted**

**Joseph F. Leeson, Jr.**                                                            **August 3, 2018**
**United States District Judge**

**I.     Introduction**

In October 2017, Plaintiff Klausmair Construction, LLC initiated this action in Pennsylvania state court against Defendants Gladden Farm, LLC and John Riston, alleging breach of contract and other related claims. After removing the case to this Court based on diversity jurisdiction, Defendants moved to dismiss Klausmair's Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons set forth below, Defendants' Motion to Dismiss is granted.

**II.    Background**

The following facts are derived from Klausmair's Complaint. Klausmair is a Pennsylvania limited liability company with its principal place of business in Pennsylvania. Compl. ¶ 1, ECF No. 1. Defendant Gladden Farm, which is a "sizeable horse farm in Harford County, Maryland, just south of the shared state line with Pennsylvania," is a Maryland limited liability company with its principal place of business in Maryland. Compl. ¶¶ 2, 8. The farm is

operated by Dr. Amy Hartman, who is a veterinarian. Compl. ¶¶ 3-4, 9-10. She resides on the farm with her husband, Defendant John Riston. *See id.*

In 2016, Hartman and Riston decided to perform significant renovations to the Gladden Farm property, including the construction of an addition to a historically protected building that formerly served as a homestead for the farm. Compl. ¶ 11. After Defendants "approached Klausmair" to perform part of the renovation work, the parties reached a contract in which Klausmair agreed to install a new roof, copper downspouts, and various trim elements to the building. Compl. ¶¶ 7, 13-14.

Klausmair began work on the project in May 2017. Compl. ¶ 29. Defendants were initially satisfied with Klausmair's work, as indicated by an email Riston sent to Klausmair praising Klausmair's diligence, professionalism, and good work. Compl. ¶¶ 27-28; *see* Compl. Ex. 3. But in August 2017, Defendants terminated the contract with Klausmair and demanded a refund of $100,000 that they had previously advanced to Klausmair. Compl. ¶ 30. Defendants later informed Klausmair that they terminated the contract because Klausmair installed faulty felt paper on the roof and because Defendants had learned that Klausmair did not have a license to operate in Maryland. Compl. ¶ 32. Klausmair alleges that these reasons were pretextual. Compl. ¶ 33. After Defendants terminated the contract, Riston allegedly "engaged in a smear campaign by, *inter alia*, posting inaccurate and untrue statements" on online review websites such as Yelp and by filing criminal charges against Klausmair. Compl. ¶¶ 35-36; *see* Compl. Ex. 4-5.

On the basis of these allegations, Klausmair's Complaint asserts the following claims against both Defendants Gladden Farm and Riston: Breach of Contract, Unjust Enrichment, and violation of Maryland's Prompt Pay Act. In addition, the Complaint asserts a claim of Defamation/Libel Per Se against Riston only.

**II.     Standard of Review**

The motion to dismiss standard under Rule 12(b)(2) is as follows:

> When reviewing a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), [the court] must accept the plaintiff's allegations as true and resolve disputed facts in favor of the plaintiff. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). However, once a defendant has raised a jurisdictional defense, the plaintiff must "prove by affidavits or other competent evidence that jurisdiction is proper." *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). If an evidentiary hearing is not held, a plaintiff "need only establish a prima facie case of personal jurisdiction." *Id.* A plaintiff meets this burden by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434 (3d Cir. 1987).

*Campbell v. Fast Retailing USA, Inc.*, No. CV 14-6752, 2015 WL 9302847, at *2 (E.D. Pa. Dec. 22, 2015).

**IV.     Analysis**

Rule 4(e) of the Federal Rules of Civil Procedure "authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992). Pennsylvania's long-arm statute, 42 Pa. Cons. Stat. Ann. § 5322(b), has a reach coextensive with the limits of the Fourteenth Amendment's Due Process Clause. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). "Accordingly, in determining whether personal jurisdiction exists, [the court asks] whether, under the Due Process Clause, the defendant has certain minimum contacts with Pennsylvania such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation marks and alterations omitted)).

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. General jurisdiction, if established, exists even "when the claim does not arise out of or is

unrelated to the defendant's contacts with the forum." *Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*, 746 F.2d 208, 211 (3d Cir. 1984). Specific jurisdiction, on the other hand, requires the plaintiff to show "that the particular cause of action sued upon arose from the defendant's activities within the forum state." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). The Court considers each type of personal jurisdiction in turn.

A.   **This Court lacks general jurisdiction over Defendants.**

Defendants contend that this Court lacks general jurisdiction over them because Klausmair cannot establish that Defendants have had "continuous and systematic contacts" with Pennsylvania. Klausmair offers minimal argument on this issue, asserting on the last page of its brief that "the nexus between [Dr. Hartman and Gladden Farm] and Pennsylvania is systematic and continuous enough to make them subject to general jurisdiction of this Court." Pl.'s Br. Opp'n 12, ECF No. 4. In support of this conclusion, Klausmair argues that Gladden Farms is near the Pennsylvania border and "more than likely" markets to Pennsylvania residents, that by "engaging in commerce so close to the Pennsylvania border, [Defendants] are regularly reaching into Pennsylvania for marketing, business development, new customers, and other vendors," and that the "website content" for Gladden Farms supports a finding that it is subject to general jurisdiction in Pennsylvania. *Id.*

The United States Supreme Court has "made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* With respect to corporations, the place of incorporation and principal place of business are the paradigm bases

for general jurisdiction. *Id.*[1] The Supreme Court has rejected as "unacceptably grasping" the notion that a corporation is subject to general jurisdiction in every State in which the corporation "engages in a substantial, continuous, and systematic course of business." *Id.* at 137-38. Nevertheless, the Court has not "foreclose[d] the possibility that in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19.

First, with respect to Mr. Riston, Klausmair has not alleged that he is domiciled in Pennsylvania, nor has it alleged facts to show that he is otherwise "at home" in that state. As for Gladden Farm, it is a Maryland limited liability company with its principal place of business in Maryland. There are no allegations that it has any members, headquarters, executives, or employees located in Pennsylvania. Even if Gladden Farm markets to Pennsylvania residents and reaches into Pennsylvania for other purposes, this does not suffice to show that this is the "exceptional case" in which a business entity may be subject to general jurisdiction in a state in which it is neither incorporated nor has its principal place of business. *See Campbell v. Fast Retailing USA, Inc.*, No. CV 14-6752, 2015 WL 9302847, at *3 (E.D. Pa. Dec. 22, 2015) ("The allegation that an entity transacts business, even substantial business, in Pennsylvania is insufficient to establish that it is essentially 'at home' in Pennsylvania."). Accordingly, Klausmair has failed to show that this Court has general jurisdiction over Defendants.

---

[1] "While [Gladden Farms] is an LLC and not a corporation, the reasoning of *Daimler* applies with equal force." *See Finn v. Great Plains Lending, LLC*, No. CV 15-4658, 2016 WL 705242, at *3 n.3 (E.D. Pa. Feb. 23, 2016).

**B.     This Court lacks specific jurisdiction over Defendants.**

Defendants contend that this Court lacks specific personal jurisdiction over them because they do not have the required minimum contacts with Pennsylvania. Specifically, Defendants contend that they are not residents of Pennsylvania, they do not have any contacts with Pennsylvania, the contract was signed in Maryland, and the construction work was performed in Maryland. Klausmair responds that specific personal jurisdiction exists over Defendants because Riston purposefully directed activities to Pennsylvania on multiple occasions in connection with the claims at issue in this case.

In determining whether there is specific jurisdiction over a defendant, the court must engage in a three-part inquiry: (1) whether the defendant purposefully directed its activities at the forum state; (2) whether the litigation arises out of or relates to at least one of those activities; and (3) whether the exercise of jurisdiction otherwise comports with fair play and substantial justice. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). "The first two parts of the test determine whether a defendant has the requisite minimum contacts with the forum." *Id.* "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Because the specific jurisdiction analysis is claim-specific, the Court considers Klausmair's contract-related claims against all Defendants separately from its libel claim against Riston. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 (3d Cir. 2004).

**i.     This Court lacks specific jurisdiction over Defendants with respect to Klausmair's contract-related claims.**

In contract cases, "the Third Circuit directs courts to 'analyze the totality of the circumstances surrounding a contract to determine whether the exercise of jurisdiction over the

6
080218

defendant is proper.'" *Happy Photo Shoppes, Inc. v. Rivershore Charters, Inc.*, No. CV 16-5071, 2017 WL 2903155, at *2 (E.D. Pa. July 7, 2017) (quoting *Miller Yacht Sales*, 384 F.3d at 99). As the Court of Appeals for the Third Circuit has summarized:

> The mere existence of a contract is insufficient to establish minimum contacts. . . . But a contract is typically an intermediate step between past negotiations and future transactions, and . . . it is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum.

*Budget Blinds, Inc. v. White*, 536 F.3d 244, 261 (3d Cir. 2008) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)). "[I]nformational communications in furtherance of a contract between a resident and a nonresident does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over the nonresident defendant." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 152 (3d Cir. 1996) (internal quotation marks and alterations omitted). But "[p]arties who 'reach out beyond [their] state and create continuing relationships and obligations with citizens of another state' are subject to the regulations of their activity in that undertaking," and courts "are not reluctant to find personal jurisdiction in such instances." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (quoting *Burger King*, 471 U.S. at 473). "In the commercial milieu, the intention to establish a common venture extending over a substantial period of time" is an important consideration. *Id.* at 151.

Klausmair contends that Riston initiated contact with Klausmair in 2016 by placing a telephone call to its Pennsylvania office. *See* Kurt Klausmair Aff. ¶ 5, Pl.'s Br. Opp'n Ex. C, ECF No. 4. After initial discussions, Riston sent to Klausmair's Pennsylvania office a set of

plans and other information. *See* Kurt Klausmair Aff. ¶ 8.[2] Sometime thereafter, Riston "reached out to [Klausmair] again . . . about performing another project" in connection with Dr. Hartman's veterinary practice on the farm. *See* Kurt Klausmair Aff. ¶ 8.

The occasional informational communications cited by Klausmair are insufficient to establish the requisite minimum contacts with Pennsylvania. Klausmair has not shown that the parties' agreement included the type of "continuing relationships and obligations" that support specific jurisdiction in contract cases. The contact at issue was for a discrete set of repairs and renovations. Even if, as Klausmair alleges, Riston reached out to it about performing another project, Klausmair has provided no reason to believe that the parties intended "to establish a common venture extending over a substantial period of time." Finally, as Defendants point out, they never visited Pennsylvania in connection with the contract, the contract was signed in Maryland, and the construction work was performed in Maryland. *See Gen. Elec. Co.*, 270 F.3d at 150 ("Actual presence during pre-contractual negotiations, performance, and resolution of post-contract difficulties is generally factored into the jurisdictional determination."). Accordingly, under the totality of the circumstances, the Court finds that Defendants did not purposely avail themselves of the privilege of conducting business in Pennsylvania sufficient to subject them to the exercise of personal jurisdiction in this Commonwealth.

Klausmair cites both *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), and *Toussant v. Williams*, 62 F. Supp. 3d 417 (E.D. Pa. 2014), for support, but both cases are distinguishable from the instant case. In *Burger King*, the plaintiff, a Florida corporation, brought

---

[2] In the Complaint, Klausmair alleges that the parties' contract was "originally entered into in Pennsylvania." Compl. ¶ 7. It is not clear what this means, however, and Klausmair does not rebut Riston's contention that he signed the contract in Maryland. *See* Def.'s Br. Supp. Mot. 4, ECF No. 3-3 ("The contract was drafted by Klausmair Construction and submitted to Mr. Riston for his signature in Maryland, which is where [he] signed the contract.").

8
080218

a breach of contract action against the defendant, a Michigan resident, who franchised a fast-food restaurant from the plaintiff. In holding that specific jurisdiction over the franchisee could be exercised in Florida, the Supreme Court determined that although there was no evidence that the franchisee had ever physically visited Florida, he had "established a substantial and continuing relationship with Burger King's Miami headquarters." *See Burger King*, 471 U.S.at 487. Specifically, the franchisee had "entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida" and had voluntarily accepted "the long-term and exacting regulation of his business from Burger King's Miami headquarters." *Id.* at 480. The Court also took into account the fact that the parties' contract provided that Florida law would govern their disputes. *See id.* at 481. None of these factors are present here.

In *Toussant*, the district court found that the defendant, a personal therapist, was subject to Pennsylvania's jurisdiction for a breach-of-contract claim related to a group-session retreat that the therapist had conducted in Ohio. The court pointed out that the therapist had solicited the plaintiff, a Pennsylvania resident, to attend the retreat by directing emails, brochures, and telephone calls to the plaintiff in Pennsylvania "in an attempt to persuade her to join the group session." 62 F. Supp. 3d at 424. By virtue of this activity, the therapist had "targeted Pennsylvania and purposefully availed herself of the privilege of doing business here." *Id.* The facts of the instant case are not analogous to those in *Toussant*. As described above, Riston placed a single phone call to Klausmair to inquire about its services, apparently after finding Klausmair's website as the result of an online search. *See* Kurt Klausmair Aff. ¶¶ 5-6. This conduct is not comparable to the persistent efforts at solicitation the defendant undertook in *Toussant*.

9
080218

**ii.     This Court lacks specific jurisdiction over Klausmair's tort claims.**

As indicated above, Count III of Klausmair's Complaint alleges a "defamation/libel per se claim" against Mr. Riston only. Although neither party has briefed the issue, courts have often applied the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984), to the jurisdictional analysis of intentional tort claims, especially defamation claims. *See Pacheco v. Padjan*, No. CV 16-3625, 2017 WL 3217160, at *3 (E.D. Pa. July 28, 2017). Under the effects test, a plaintiff may demonstrate personal jurisdiction if he or she shows:  (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity. *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007). If a plaintiff can establish these three elements, then "the plaintiff can demonstrate a court's jurisdiction over a defendant even when the defendant's 'contacts with the forum alone . . . are far too small to comport with the requirements of due process' under [the] traditional analysis.'" *Id.* (quoting *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998)). "There is no single formula for triggering a personal jurisdiction finding under *Calder*." *Pacheco*, 2017 WL 3217160, at *5. "A plaintiff can demonstrate that an Internet post targeted a specific forum by, for example, demonstrating that (i) that the website itself focused on a specific geographic area or (ii) the content of the post targeted a specific geographic area." *Id.* (citing *Gorman v. Jacobs*, 597 F. Supp. 2d 541, 548 (E.D. Pa. 2009)).

Klausmair alleges that Riston defamed it by posting inaccurate reviews on the Yelp website concerning Klausmair, submitting a Business Consumer Alliance complaint alleging that Klausmair committed fraud and theft, and filing criminal charges against Klausmair. Compl.

¶ 56. Klausmair does not allege, however, that Riston's statements were targeted directly at Pennsylvania. Nor do the facts contained in the Complaint or subsequent briefing demonstrate that Riston expressly aimed his conduct at Pennsylvania. Nothing about the websites on which Riston allegedly posted is specific to Pennsylvania. *See Barrett v. Catacombs Press*, 44 F. Supp. 2d 717, 728 (E.D. Pa. 1999) (finding that information posted on a website that is available worldwide does not show an intent to target Pennsylvania residents with that information). Furthermore, the contents of the posts allegedly authored by Riston do not specifically target, mention, or reference Pennsylvania.[3] Accordingly, the "effects test" does not provide support for this Court's exercise of personal jurisdiction over Riston with respect to Klausmair's libel claim against him.

## IV. Conclusion

For the reasons set forth above, Klausmair has failed to show that this Court has personal jurisdiction over Defendants. The Court therefore dismisses this case for lack of personal jurisdiction. A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Court

---

[3] If anything, the posts appear to be focused on Maryland. According to the exhibits attached to Klausmair's Complaint, Mr. Riston allegedly wrote the following message on the Yelp website: "consumers beware! Klausmair is soliciting work in Maryland as an unlicensed contractor and the Maryland states attorney and the [M]aryland home improvement commission have filed criminal charges, fraud, theft." Compl. Ex. 4. Similarly, on the Business Consumer Alliance website, Mr. Riston allegedly wrote that Klausmair had committed "Fraud[,] theft, working as a salesperson/contractor without a license for the state of Maryland." Compl. Ex. 5.